# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| VAUGHN NEITA, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) Case No. 19 C 595 |
| | ) |
| CITY OF CHICAGO, CHICAGO POLICE | ) Judge Joan H. Lefkow |
| OFFICERS KAREN RITTORNO, | ) |
| DOMINGO ENRIQUEZ, JR., and ANIMAL | ) |
| CARE AND CONTROL OFFICER | ) |
| ARTURO FRANCO, | ) |
| | ) |
|     Defendants. | ) |

## OPINION AND ORDER

Vaughn Neita has sued the City of Chicago, Chicago police officers Karen Rittorno and Domingo Enriquez, and Chicago Department of Animal Care and Control officer Arturo Franco under 42 U.S.C. § 1983 and various Illinois tort theories. Against the defendant officers, Neita brings claims of false arrest (Count I), illegal search and seizure (Count II), malicious prosecution under § 1983 and Illinois law (Counts III and VIII), conspiracy to deprive him of his constitutional rights (Count IV), retaliation for the exercise of his First Amendment rights (Count V), and failure to intervene (Count VI).[1] Against the City, Neita brings claims for indemnification (Count VII) and malicious prosecution under the doctrine of respondeat superior (Count VIII). Neita also brings a claim of intentional infliction of emotional distress against all

---

[1] Counts I and III are brought only against Rittorno and Enriquez; not Franco.

defendants (Count IX). Defendants now move to dismiss Neita's complaint in its entirety. (Dkt. 12.) For the reasons below, defendants' motion is granted in part and denied in part.[2]

## BACKGROUND[3]

On February 4, 2018, Officer Rittorno received an email from the City of Chicago Department of Animal Care and Control requesting an investigation into the treatment of a dog at 413 N. Central Park Ave. (Dkt. 1 ¶ 6.) On February 7, 2018, Officers Rittorno and Enriquez went to the address and observed Neita's dog, Macy, in good health and in an otherwise "unremarkable condition." (*Id.* ¶ 7.) Nevertheless, the officers seized Macy. (*Id.*) Neita was not present when the officers first arrived at his house but subsequently returned home and requested that Macy be released into his custody. (*Id.* ¶¶ 8–9.) The officers refused. (*Id.* ¶ 9.) Neita telephoned his sister, also a Chicago police officer, who advised Neita to request that the officers call for their supervisor. (*Id.* ¶ 10.) Neita made that request, but Officer Rittorno stated that they had no supervisor, to which Neita's sister replied that she would call for a supervisor herself. (*Id.* ¶ 11.) Officer Rittorno then acquiesced in calling for a supervisor, but immediately thereafter Officers Rittorno and Enriquez placed Neita under arrest. (*Id.* ¶ 11.) At the direction of Officers Rittorno and Enriquez, Officer Franco took possession of Macy. (*Id.* ¶ 13.) As a result of these events, Neita was charged with animal cruelty and violation of owner's duties under Illinois law. (*Id.* ¶ 15.)

---

[2] The court has jurisdiction under 28 U.S.C. §§ 1331 and 1367. Venue is proper in this district under 28 U.S.C. § 1391(b).

[3] The following recitation of facts is taken from the well-pleaded allegations in Neita's complaint, which are presumed true for purposes of this motion. *See Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).

Neita had previously filed a civil rights lawsuit similar to the present one, and he argues that all of the defendant officers' acts described above were motivated by a desire to retaliate against him for doing so. (*Id.* ¶ 53.)

On March 16, 2018, a hearing was held before Judge Robert Kuzas of the Circuit Court of Cook County on a motion by the State to require Neita to post security and forfeit Macy. (*Id.* ¶ 17.) Officer Rittorno and Dr. Lindsey Garner, a veterinarian who had conducted a physical exam of Macy, testified for the State. (*Id.* ¶ 17.) Dr. Garner testified that she had conducted a thorough physical examination of Macy and found her to be in "normal body condition," with some dirt in her fur coat. (*Id.* ¶ 19.) At the conclusion of the hearing, the Circuit Court denied the State's petition to forfeit Macy and ordered Macy returned to Neita subject to payment of reasonable costs for care to date, which amounted to $369.00. (Dkt. 1 ¶¶ 20–21.)

On April 18, 2018, the case was set for a bench trial. (*Id.* ¶ 22.) At trial, Officer Rittorno conceded she had withheld photographic evidence from discovery, which the State then produced in court that day. (*Id.* ¶¶ 23–24.) The Court granted Neita's motion for a directed verdict on the grounds that the State had failed to set forth prima facie evidence of Neita's guilt of any offense. (*Id.* ¶ 26.) The Court concluded that the State's proffered basis for the criminal charges against Neita was that he had failed to keep his dog house at least two inches off the ground, but that no such obligation exists. (*Id.* ¶¶ 26–27)

Neita subsequently brought this action, which defendants move to dismiss for failure to state a claim, relying largely on transcripts of testimony from the State criminal case that Neita attached to his complaint, which they assert show the officers had probable cause for Neita's arrest. (Dkt. 12.) In opposition to the motion, Neita argues that the officers lacked probable cause to arrest him viewing the facts in the light most favorable to Neita. (Dkt. 16.)

**LEGAL STANDARD**

In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Active Disposal*, 635 F.3d at 886; *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also establish that the requested relief is plausible on its face. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009); *Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). The allegations in the complaint must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. At the same time, the plaintiff need not plead legal theories; it is the facts that count. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010); *see also Johnson* v. *City of Shelby*, 574 U.S. 10, 135 S. Ct. 346, 346 (2014) (per curiam) ("Federal pleading rules call for a short and plain statement of the claim showing the pleader is entitled to relief; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted").

**ANALYSIS**

**I.    Documents Before the Court**

In general, courts may only consider the allegations within the four corners of a complaint when deciding a Rule 12(b)(6) motion. *Venture Assocs. Corp.* v. *Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). When information outside the complaint comes before the court, Rule 12(d) directs courts either to exclude the information or to convert the motion to one for summary judgment. *Id.* Nevertheless, a court may consider extrinsic documents as though they were part of the complaint if the documents are referred to in the complaint and are central to the claim. *Id.*; *see also Wright* v. *Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th

Cir. 1994). This exception aims at preventing plaintiffs from evading Rule 12(b)(6) dismissal simply by omitting critical materials from the complaint. *Brownmark Films, LLC* v. *Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012); *Tierney* v. *Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

Here, Neita attached multiple documents to his complaint, including an arrest report (Exhibit 1), a Gang Investigation Division Supplementary Report (Exhibit 2), and transcripts of proceedings in the underlying criminal case (Exhibits 3 & 4). Defendants argue that statements made by the officers in these documents can be relied upon to demonstrate probable cause at the motion to dismiss stage, and thus that Neita has pleaded himself out of court.[4] (Dkt. 12 at 4.)

Defendants' argument is unpersuasive. "The plaintiff's purpose in attaching an exhibit to his complaint determines what assertions if any in the exhibit are facts that the plaintiff has incorporated into the complaint." *Guzzell* v. *Hiller*, 223 F.3d 518, 519 (7th Cir. 2000). Neita repeatedly disputes the accuracy of the officer's testimony throughout the complaint—indeed, those disputes form the heart of his claims. (*See*, *e.g.,* dkt. 1 ¶¶ 18, 25.) The court cannot credit the officers' testimony to the contrary at this stage. *See Stopa* v. *City of Chi.*, No. 91 C 2909, 1992 WL 7437, at *2 (N.D. Ill. Jan. 14, 1992) ("defendants' attempt to submit evidence to establish probable cause is inappropriate in a motion to dismiss"); *Gay* v. *Robinson*, No. 08-4032, 2009 WL 196407, at *4 (C.D. Ill. Jan. 27, 2009) ("the existence of probable cause is a fact-based inquiry that is more properly resolved on summary judgment").

## II.    Count I: False Arrest

Neita's first claim is that his arrest violated his Fourth Amendment rights and is actionable under § 1983. "To prevail on a false-arrest claim under 42 U.S.C. § 1983, a plaintiff

---

[4] Defendants particularly emphasize that the documents attached to Neita's complaint show that the state court specifically found that Neita had committed animal cruelty applying a preponderance-of-the-evidence standard, but ruled in his favor applying the criminal beyond-a-reasonable-doubt standard. (Dkt. 12 at 3.) The state court's finding does not have preclusive effect in this proceeding.

5

must show that there was no probable cause for his arrest." *Neita* v. *City of Chicago*, 830 F.3d 494, 497 (7th Cir. 2016) (citing *Thayer* v. *Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012)). To determine whether an officer had probable cause to arrest, the court examines whether an objectively reasonable officer in the arresting officer's position would conclude, based on the facts and circumstances within the officer's knowledge, that the suspect has committed, is committing, or is about to commit an offense. *See D.C.* v. *Wesby*, — U.S. — , 138 S. Ct. 577, 586 (2018); *Harney* v. *City of Chi.*, 702 F.3d 916, 922 (7th Cir. 2012). The probable cause standard depends on the totality of the circumstances and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Wesby*, 138 S. Ct. at 586 (quoting *Illinois* v. *Gates*, 462 U.S. 213, 243–44, n.13, 103 S. Ct. 2317 (1983)). At the motion to dismiss stage, after accepting the well-pleaded facts as true, the existence of probable cause is a question of law. *Rusinowski*, 835 F. Supp. 2d at 648 (citing *United States* v. *Ellis*, 499 F.3d 686, 688 (7th Cir. 2007)).

Neita was arrested for suspected animal cruelty and violation of owner's duties under the Illinois Humane Care for Animals Act, 510 Ill. Comp. Stat 70/3.01[5] and 510 Ill. Comp. Stat. 70/3.[6] (Dkt. 1 at ¶ 15; Ex. 1.) The complaint alleges that Macy presented in an unremarkable

---

[5] **510 Ill. Comp. Stat. 70/3.01 Cruel Treatment**
(a) No person or owner may beat, cruelly treat, torment, starve, overwork or otherwise abuse any animal.
(b) No owner may abandon any animal where it may become a public charge or may suffer injury, hunger or exposure.
(c) No owner of a dog or cat that is a companion animal may expose the dog or cat in a manner that places the dog or cat in a life-threatening situation for a prolonged period of time in extreme heat or cold conditions that:
    (1) results in injury to or death of the animal; or
    (2) results in hypothermia, hyperthermia, frostbite, or similar condition as diagnosed by a doctor of veterinary medicine.

[6] **510 Ill. Comp. Stat. 70/3 Owner's Duties**
(a) Each owner shall provide for each of his or her animals:
    (1) a sufficient quantity of good quality, wholesome food and water;

condition and in good health at the time the officers arrived at his residence. (Dkt. 1 ¶ 7.) Furthermore, Neita's testimony at the seizure hearing—which he asks this court to credit—was that Macy was given ample food and water and her shelter was adequately heated. Neita further testified that the double leash used to tether Macy was eleven feet in length, surpassing the 10-foot requirement for tethering outside. (*See id.* ¶ 26.) Taken as true, these assertions do not establish as a matter of law that a reasonable officer would have had probable cause to believe that Neita had abused or neglected Macy in violation of the cited statutes.

## III. Count II: Illegal Search and Seizure

Neita next alleges that Officers Rittorno, Enriquez, and Franco illegally searched his person and seized Macy after his arrest. Searches and seizures conducted without a warrant "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established

---

       (2) adequate shelter and protection from the weather;
       (3) veterinary care when needed to prevent suffering; and
       (4) humane care and treatment.
(b) To lawfully tether a dog outdoors, an owner must ensure that the dog:
       (1) does not suffer from a condition that is known, by that person, to be exacerbated by tethering;
       (2) is tethered in a manner that will prevent it from becoming entangled with other tethered dogs;
       (3) is not tethered with a lead that (i) exceeds one-eighth of the dog's body weight or (ii) is a tow chain or a log chain;
       (4) is tethered with a lead that measures, when rounded to the nearest whole foot, at least 10 feet in length;
       (5) is tethered with a properly fitting harness or collar other than the lead or a pinch, prong, or choke-type collar; and
       (6) is not tethered in a manner that will allow it to reach within the property of another person, a public walkway, or a road.
(c) Subsection (b) of this Section shall not be construed to prohibit:
       (1) a person from walking a dog with a hand-held leash;
       (2) conduct that is directly related to the cultivating of agricultural products, including shepherding or herding cattle or livestock, if the restraint is reasonably necessary for the safety of the dog;
       (3) the tethering of a dog while at an organized and lawful animal function, such as hunting, obedience training, performance and conformance events, or law enforcement training, or while in the pursuit of working or competing in those endeavors; or
       (4) a dog restrained in compliance with the requirements of a camping or recreational area as defined by a federal, State, or local authority or jurisdiction.

and well-delineated exceptions." *Arizona* v. *Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710 (2009) (citing *Katz* v. *United States*, 389 U.S. 347, 357, 88 S. Ct. 507 (1967)). Among these exceptions is a search incident to a lawful arrest, which Defendants argue applies here. *Id*.; (Dkt. 12 at 7.)

As set forth above, however, because Neita adequately alleges that his arrest was not lawful, the court cannot determine as a matter of law that the search-incident-to-arrest exception applies. Therefore, Neita's claim for illegal search and seizure may proceed.

## IV. Count III: Section 1983 Malicious Prosecution

Neita next asserts a § 1983 malicious prosecution claim against Officers Rittorno and Enriquez. A § 1983 claim must be rooted in a constitutional violation, and Neita asserts that the violation here was of his Fourth Amendment rights. (Dkt. 1 at 8.) As distinct from a claim of unlawful detention, there is no right of action for malicious prosecution based on the Fourth Amendment. *Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018) ("There is no such thing as a constitutional right not to be prosecuted without probable cause") (quoting *Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013)); *see also Myers v. Bresnahan*, No. 18 C 8312, 2019 WL 2450489, at *2 (N.D. Ill. June 12, 2019). The point of these cases, as it relates to Neita, is that his remedy for the alleged Fourth Amendment violations he suffered are the false-arrest and illegal-search-and-seizure claims he raised above.[7] *See Serino*, 735 F.3d at 594. Count III is dismissed.

## V. Count IV: Conspiracy to Deprive Constitutional Rights

To state a claim for conspiracy under § 1983, a plaintiff must allege he or she "was deprived of a right secured by the Constitution or laws of the United States and that the

---

[7] The Seventh Circuit left open the possibility that a claim akin to malicious prosecution might be available under § 1983 based on the Due Process Clause. *Serino*, 735 F.3d at 594-95 (citing *Reed* v. *City of Chicago*, 77 F.3d 1049, 1051 (7th Cir. 1996)), *see also Ajster v. Towne*, No. 18 C 854, 2018 WL 3474443, at *2 (N.D. Ill. July 19, 2018). But that is not the claim Neita brings.

deprivation was caused by a person acting under color of state law." *Kelley* v. *Myler*, 149 F.3d 641, 648–49 (7th Cir. 1998). A plaintiff alleging a conspiracy must present more than "mere suspicion" or a "bare allegation of a conspiracy." *Cooney* v. *Rossiter*, 583 F.3d 967, 970–71 (7th Cir. 2009).

Defendants argue again only that the claim should be dismissed because the officers had probable cause to arrest Neita, and thus no constitutional violation occurred. (Dkt. 12 at 8-9.) As discussed above, that argument fails.

**VI.     Count V: Retaliation**

Neita next alleges the officers retaliated against him based on his exercise of his First Amendment rights in previously filing a civil rights lawsuit in similar circumstances, *see Neita*, 830 F.3d at 497, and in asking to speak to a supervisor at the time of his arrest. To adequately plead a claim of First Amendment retaliation, Neita must allege that (1) he engaged in activity protected by the First Amendment, (2) he suffered a deprivation that would likely deter First Amendment activity in the future, and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action. *Massey* v. *Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

Defendants argue that neither Neita's prior lawsuit nor his request to speak to a supervisor constitute protected activity. (Dkt. 12 at 9-10.) Defendants also argue that Neita's complaint does not allege a sufficient causal link between his alleged protected activity and his subsequent arrest and prosecution. (*Id.* at 10.)

The law in this circuit appears to be unsettled as to whether citizens alleging police retaliated against them because of their speech must show that their speech related to a matter of

9

public concern.[8] That is the requirement for speech to be protected in the public employment context, but not in the prison context. *See Herron* v. *Meyer*, 820 F.3d 860, 864 (7th Cir. 2016). Regardless, the court has no trouble holding that both a lawsuit alleging violation of constitutional rights and a request to speak to a police officer's supervisor to complain about the officer's conduct relate to matters of public concern. *Glatt*, 87 F.3d at 193 (a lawsuit complaining of "allegedly unconstitutional behavior by public officials" constitutes protected speech); *Thomas* v. *City of Chi.*, 155 F. Supp. 2d 820, 823 (N.D. Ill. 2001) (same); *Zitzka*, 743 F. Supp. 2d at 916 (signs and public speeches critical of police constitute protected speech); *see also Miller* v. *Jones*, 444 F.3d 929, 936 (7th Cir. 2006) ("Our cases have consistently held that speech alleging government malfeasance addresses matters of public concern in its substance").

Neita's retaliation claim with respect to his prior lawsuit contains a defect, however, in that he does not allege that any of the individual defendants knew of the prior suit. Absent such an allegation, of course, a claim of retaliation makes no sense. *See Lozman* v. *City of Riviera Beach, Fla.*, — U.S. —, 138 S. Ct. 1945, 1954 (2018). This court previously has been unwilling to infer an allegation of knowledge of a prior suit from a bare allegation of retaliation. *Baisi* v. *Burke*, 359 F. Supp. 3d 592, 595–96 (N.D. Ill. 2019) (dismissing retaliation claim where plaintiff failed to "allege that the individuals he sues here were even aware of [a prior lawsuit]"). Thus, Neita's retaliation claim is dismissed insofar as it alleges retaliation for his prior lawsuit, as opposed to his request to speak with a supervisor.

---

[8] *Compare Glatt* v. *Chi. Park Dist.*, 87 F.3d 190, 193 (7th Cir. 1996) ("The filing of an ordinary tort or contract suit could not plausibly be compared to making a speech or writing a book or petitioning the government for a redress of grievances"), *with Zorzi* v. *Cty. of Putnam*, 30 F.3d 885, 896 (7th Cir. 1994) ("Retaliation for filing a lawsuit is prohibited by the First Amendment's protection of free speech") *and Zitzka v. Vill. of Westmont*, 743 F. Supp. 2d 887, 915 (N.D. Ill. 2010) ("Outside the employment context the First Amendment forbids retaliation for speech even about private matters").

## VII. Count VI: Failure to Intervene

Neita next alleges that Defendant Officers failed to intervene to prevent each other's misconduct. An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know that any constitutional violation has been committed by law enforcement and the officer had a realistic opportunity to intervene to prevent the harm from occurring. *Yang* v. *Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). "In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation." *Harper* v. *Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) (citing *Filmore* v. *Page*, 358 F.3d 496 (7th Cir. 2004)). Defendants argue that this claim should be dismissed because there is no underlying constitutional violation. This argument is unsuccessful because Neita has adequately pleaded constitutional claims as discussed above. Therefore, Neita's claim for failure to intervene may proceed.

## VIII. Count VII: Indemnification

Neita brings an indemnification claim against the City of Chicago under 745 ILCS 10/9-102, which directs local governments to "pay any tort judgment or settlement for compensatory damages . . . for which it or an employee acting within the scope of his employment is liable." *See Griffin* v. *Meagher*, No. 09-CV-1477, 2009 WL 5174684, at *5 (N.D. Ill. Dec. 21, 2009). Because Neita has stated claims for tort liability against city employees, this claim may also proceed.

## IX. Count VIII: Malicious Prosecution Under Illinois Law

To state a claim for malicious prosecution under Illinois law, a plaintiff must allege that: "(1) he was subjected to judicial proceedings; (2) for which there was no probable cause; (3) the

11

defendants instituted or continued the proceedings maliciously; (4) the proceedings were terminated in the plaintiff's favor; and (5) there was an injury." *Reed* v. *City of Chicago*, 77 F.3d 1049, 1051 (7th Cir. 1996) (citing *Curtis* v. *Bembenek*, 48 F.3d 281, 286 (7th Cir. 1995)). "Police officers may be liable for malicious prosecution if they either signed a criminal complaint or played a significant role in causing the prosecution of the plaintiff." *Wilbon* v. *Plovanich*, 67 F. Supp. 3d 927, 949 (N.D. Ill. 2014); *see also Bianchi* v. *McQueen*, 58 N.E.3d 680, 698, 2016 IL App (2d) 150646, ¶ 72 (Ill. App. Ct. 2016). Illinois courts have said that a lack of probable cause "may result in an inference of legal malice under limited circumstances." *Scott* v. *Bender*, 948 F. Supp. 2d 859, 872 (N.D. Ill. 2013) (original emphasis omitted); *Bianchi*, 58 N.E.3d 680, 699 ("Malice may be inferred from a lack of probable cause only where there is no credible evidence that refutes that inference"). A claim for malicious prosecution under Illinois law also permits *respondeat superior* liability against a municipality. *Simms v. Brown*, No. 15-CV-1147, 2015 WL 5951690, at *1 (N.D. Ill. Oct. 13, 2015);

Defendants' only argument that Neita's malicious prosecution claim should be dismissed is that he cannot prove the absence of probable cause. (Dkt. 12 at 8.) As set forth above, that argument fails. Therefore, Neita's claim for malicious prosecution under Illinois law may proceed.

## X. Count IX: Intentional Infliction of Emotional Distress

Neita also asserts a claim for intentional infliction of emotional distress (IIED) under Illinois law against all Defendants. To state a cause of action for IIED under Illinois law, a plaintiff must allege that (1) the conduct involved was truly extreme and outrageous, (2) the actor intended that his conduct inflict severe emotional distress, and (3) the conduct must in fact cause severe emotional distress. *Feltmeier* v. *Feltmeier*, 798 N.E.2d 75, 80, 207 Ill. 2d 263 (2003)

(citing *McGrath* v. *Fahey*, 533 N.E.2d 806, 809, 126 Ill. 2d 78 (1988)). Defendants argue that Neita fails to state a claim for IIED because his complaint merely recites the elements of the claim. (Dkt. 12 at 13.)

The court agrees that Neita fails to plead any extreme or outrageous conduct by the defendant officers beyond their alleged acts in maliciously prosecuting him. Under those circumstances, courts have dismissed an IIED claim as derivative of a malicious prosecution claim. *Rivera* v. *Guevara*, 319 F. Supp. 3d 1004, 1056 (N.D. Ill. 2018) (citing *Beaman* v. *Freesmeyer*, 82 N.E.3d 241, 255, 415 Ill. Dec. 296 (Ill. App. Ct. 2017)). The court will do so again here.

## CONCLUSION

Defendants' motion to dismiss all counts is denied except as to Count III for malicious prosecution under § 1983, Count V insofar as it alleges retaliation for Neita's prior lawsuit, and Count IX for intentional infliction of emotional distress. Dismissal of those claims is without prejudice to repleading.

Date: November 1, 2019

_____
U.S. District Judge Joan H. Lefkow