**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VAUGHN NEITA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:19-cv-00595 |
| | ) | |
| v. | ) | Judge Lefkow |
| | ) | |
| THE CITY OF CHICAGO et al. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION TO DISQUALIFY THE CITY OF CHICAGO CORPORATION COUNSEL'S OFFICE FROM REPRESENTING THE DEFENDANTS AND FOR SANCTIONS PURSUANT TO 18 U.S.C. § 1927**

Plaintiff Vaughn Neita, through counsel, respectfully moves to disqualify the City of Chicago's Corporation Counsel's Office from representing the Defendants and for sanctions pursuant to 18 U.S.C. § 1927 for multiplying the proceedings through unethical and dishonest conduct in violation of Northern District of Illinois Local Rule 83.50. In support thereof, Plaintiff states as follows:

The Court should disqualify the City of Chicago's Corporation Counsel's Office from representing the Defendants and impose sanctions pursuant to 18 U.S.C. § 1927 for needlessly multiplying the proceedings. Defense counsel have violated several ABA Model Rules that have aided and abetted a conspiracy by the individual defendants to deprive Mr. Neita of access to the courts in further violation of his constitutional rights. In doing so, defense counsel should be sanctioned pursuant to 18 U.S.C. § 1927 for needlessly multiplying the proceedings to assist their client's misconduct.

1

## I.  The Defense Engaged In A Conspiracy Through The Litigation

The defense engaged in an unlawful agreement to withhold evidence and witnesses until after the statute of limitations passed, which caused Plaintiff to be unable to name the proper arresting officers in his case, including Officer Walsh, who handcuffed the Plaintiff.[1]  "The right of individuals to pursue legal redress for claims which have a reasonable basis in law and fact is protected by the First and Fourteenth Amendments." *Vasquez v. Hernandez*, 60 F.3d 325, 328 (7th Cir. 1995)(citing *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983)(additional citations omitted)).   The concealment of important facts by police officials until after the statute of limitations period denies a Plaintiff access to the courts in violation of their constitutional rights. *Bell v. City of Milwaukee*, 746 F.2d 1205, 1261-62 (7th Cir. 1984)(overturned by *Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005) on other grounds).

Chicago Police Officers arrested Plaintiff on February 7, 2018, Dkt. 35, Def.'s Amended Answer, pp. 2-3, ¶¶ 7, 11, and two years later on February 7, 2020, the statute of limitations barred Plaintiff's federal claims related to his arrest.  *See Mitchell v. Donchin*, 286 F.3d 447, 450 (7th Cir. 2002).   Plaintiff timely filed suit, and on November 15, 2019, the Defendants answered the complaint.  Dkt. 30, Officers' Answer; Dkt. 31, City's Answer.  On January 24, 2020, Defendants amended their answer.  Dkt. 35 Officers' Amended Answer; Dkt. 37, City's Amended Answer. Within all four answers, Defendants plead to the effect that "Defendants further admit that Defendants Rittorno and Enriquez placed Plaintiff under arrest." E.g. Dkt. 30, p. 3, ¶ 11.

On October 29, 2020, Defendant Enriquez testified that Officer Walsh handcuffed Plaintiff. Dkt. 139-3, pp. 10:7-17; 11:13-16.[2]  On December 24, 2019, the defense had made their initial Rule 26(a)(1) disclosures but did not include Officer Walsh. Dkt. 147-4.  Defendants admit that

---

[1] The substance of Plaintiff's conspiracy claim was not addressed by the defense's summary judgment motion.
[2] Defendant Rittorno never testified that Officer Walsh handcuffed Plaintiff.  Dkt. 139-4, p. 124:8-12; 241:1-14.

they did not disclose the body camera videos that depicted the circumstances of Plaintiff's arrest until October 20, 2020 and admit that they did not disclose several officers present for Plaintiff's arrest until July 21, 2021. Dkt. 163, p. 12, ¶¶ 37-40. Even in April 2020, through their verified responses to interrogatories, Dkt. 147-5, 147-6, and responses to production requests, Dkt. 147-9, the defense did not produce the body worn camera video files or identify and disclose the relevant police witnesses to Plaintiff's arrest, including Officer Walsh, who handcuffed the Plaintiff. Rittorno concedes that when she made disclosures pursuant to Fed. R. Civ. P. 26(a)(1) and answered written discovery, she knew about the body-worn camera videos. Dkt. 139-4, p. 294:18-25.

The defense concealed Officer Walsh's involvement in Plaintiff's arrest by affirmatively claiming that Officers Rittorno and Enriquez arrested the Plaintiff in the answer and by failing to timely disclose relevant police officials as witnesses and video evidence depicting them. Defendants therefore conspired to deprive Plaintiff of his right of access to the Courts in violation of the First Amendment.

## II.     Direct Contact With Mr. Neita Violated Rule 4.2

On December 8, 2023, the City of Chicago's Corporation Counsel's Office directly contacted Mr. Neita in violation of ABA Model Rule 4.2. On December 5, 2023, the Court issued an order allowing $10,531.88 in costs. Dkt. 187. On December 8, 2023, the City of Chicago Corporation Counsel's office directly contacted Mr. Neita about the order, violating ABA Model Rule 4.2. *See* Ex. 1, 12.8.23 Order.

ABA Model Rule 4.2 prohibits communication with Mr. Neita about his civil rights case. Yet, the Corporation Counsel's Office directly sent Mr. Neita a "demand letter" that threatened Mr. Neita with the potential for additional costs if he did not pay in full or arrange a payment plan.

*Id.* The fact that the demand letter was sent within three days of the Court's order reflects an ongoing effort to punish and intimidate Mr. Neita for bringing his civil rights case by the attorneys for the defense, which cannot be squared with the rules of professional conduct or basic standards of litigation decorum. Defense counsel created confusion by directly contacting Mr. Neita and interfered with the attorney/client relationship. Had Plaintiff paid the bill of costs without the advice of counsel, he would have extinguished his right to reconsider that decision and to appeal the result, which he intends to do, and the defense's ongoing disregard of the rules of ethics is a paramount concern in this litigation. The attorneys for the defense have been involved in aiding their clients' dishonesty and misconduct, through dishonesty and misconduct themselves, and the time has come to disqualify them from participating in the litigation to protect the integrity of the proceeding.

### III.     A Concurrent Conflict Of Interest Should Result In Disqualification

The concurrent conflict of interest between the duties to the individual officers, the duties to the City of Chicago, the duties to the Court, and the duties to opposing counsel should result in disqualification. Attorney disqualification is a drastic remedy that courts should hesitate to impose unless absolutely necessary because disqualification creates delay and deprives a party of their chosen legal advisor. *Andrew Corp. v. Beverly Mfg. Co.*, 415 F.Supp.2d 919, 925 (N.D.Ill. 2006)(citations omitted). Yet, an unwaived concurrent conflict "eliminates any opportunity to fashion a less restrictive remedy." *Id.* "Prohibiting lawyers who violate ethical requirements from further participating in the legal proceedings to which the violation pertains is one way to renew the public's faith in the integrity of the legal profession and in the fairness of the judicial proceedings." *Id.* at 926.

The ABA Model Rules prohibit of lawyer from representing a client "if the representation involves a concurrent conflict of interest," which exists where "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." ABA Model Rule 1.7(a). ABA Model Rule 1.10 imputed the disqualification onto the City of Chicago's Corporation Counsel's Office. *See also* ABA Model Rule 1.11(d)("[A] lawyer currently serving as a public officer of employee: (1) is subject to Rule 1.7 and 1.9."

The individual defendants created a concurrent conflict of interest by seeking to blame their attorney for failing to disclose and produce material evidence and witnesses. On November 3, 2020, Officer Rittorno testified that she did not disclose the body worn cameras in her Rule 26 disclosures or answers to written discovery because even though she knew about them, she did not possess or have access to them. Dkt. 139-4, pp. 294:18-295:4. Rittorno claims that instead of disclosing the evidence, she made her attorney Emily Dory aware of the evidence when the case began. Dkt. 139-4, p. 295:1-21. Yet, in producing the video in October 2020, Ms. Dory had already claimed that "this week was the first time I was told by my client that an assisting unit on scene might have had body worn camera." *See* Dkt. 188-9, 10.21.2020 Emails, p. 3.

Rittorno's testimony created a significant risk that the representation of the defendants would be materially limited by other ethical duties, regardless of its truthful character. Ms. Dory and the Corporation Counsel's Office also had an obligation to the City of Chicago and other defendants, and if Ms. Dory knew that Rittorno's testimony was untruthful, then Ms. Dory knew that Rittorno violated an obligation that police officers have to the City of Chicago, committed perjury under oath in violation of law, and violated her legal obligations under the Federal Rules of Civil Procedure. Such knowledge created a conflict of interest between Rittorno and Enriquez

and created a conflict between Rittorno and the City of Chicago, implicating ABA Model Rule 1.13.

Rittorno's testimony further created a significant risk that attorneys from the Corporation Counsel's Office might be limited in their ability to defend Rittorno in a manner that complies with ABA Rule 3.3. ABA Model Rule 3.3(a) bars knowing false statements of fact to a tribunal or the failure to correct a false statement of fact or law previously made. Model Rule 3.3(a)(3) prohibits a lawyer from knowingly offering false evidence and provides that a lawyer must take reasonable remedial measures when a client intends to do so. To the extent the failure to make adequate Rule 26 disclosures and sworn responses to written discovery ever became an issue, neither Ms. Dory nor the members of her firm would be able to defend Rittorno's claim that she told Ms. Dory about the video in the beginning of the litigation because both Ms. Dory and her firm would know that Rittorno lied, and the rules of ethics prohibit a lawyer from relying on their client's known lies before a tribunal.

Rittorno's testimony also materially limited the Corporation Counsel's Office from complying with ABA Model Rule 3.4, which prohibits obstructing Plaintiff's access to evidence, concealing evidence, assisting others to do the same, falsifying evidence, counseling a witness to testify falsely, and failing to make a reasonably diligent effort to comply with a legally proper discovery request. To the extent Rittorno failed to make adequate Rule 26 disclosures and sworn responses to written discovery, the Corporation Counsel's Office would be obligated to turn over to Plaintiff related evidence and correspondence, including the disclosure of witnesses who knew Rittorno testified falsely and potentially serving themselves as a witness.

Rule 1.7 prohibits the Corporation's Counsel's Office from representing the individual Defendants in this matter, as imputed to their entire office through ABA Model Rule 1.10 and

1.11(d).  The circumstances created a significant risk that their representation would be limited by their duties to the other individual officers, the City of Chicago, the duty of candor to the Court in Rule 3.3, and the duty to opposing counsel in Rule 3.4.

## IV. The Corporation Counsel's Office Violated Rule 3.3 And Should Be Disqualified

ABA Model Rule 3.3(a) bars an attorney from making false statements of fact to a tribunal or the failure to correct a false statement of fact or law previously made.  Model Rule 3.3(a)(3) prohibits a lawyer from knowingly offering false evidence and provides that a lawyer must take reasonable remedial measures when a client intends to do so.  The Corporation Counsel's Office violated Rule 3.3 by relying on and making false statements of fact to the Court and failing to remediate Rittorno's dishonest effort to claim that Emily Dory should be accountable for the failure to disclose evidence.

Defense counsel have made several false statements to the Court in violation of Rule 3.3.  First, the Court relied on a false statement of material fact in declining to sanction the defense, Dkt. 167, p. 9, because the defense admitted that Rittorno "informed civil defense counsel at the beginning of the lawsuit that there was body-worn camera footage." Dkt. 163, p. 12, ¶ 37.  Rule 3.3 prohibited the Corporation Counsel's Office from relying on Rittorno's admission because defense counsel knew that Rittorno had testified falsely, where Ms. Dory claimed that "this week was the first time I was told by my client that an assisting unit on scene might have had body worn camera." *See* Dkt. 188-9, 10.21.2020 Emails, p. 3.

Rule 3.3 also required the Corporation Counsel's Office to remediate Rittorno's false testimony, which they failed to do.  Instead, defense counsel argued a fallacy and failed to address the untruthful nature of their client's claim about another lawyer in their office.  *See* Dkt. 165, pp.

12-13 (deliberately misconstruing Plaintiff's claim as one for withholding material exculpatory evidence).

Defense counsel went on to make numerous other false statements of fact in support of summary judgment. *See* Dkt. 154, pp. 9-11. For example, the defense misrepresented that "Enriquez testified that [the alleged choke-collar] was a sign of abuse in that he had seen dogs choke themselves when leashed like this and left alone outside." Dkt. 136-1, Def.'s Summ. Judg. Memo, pp. 16-17. The deliberate misconstruction of Enriquez' testimony violates Rule 3.3.

In violation of Rule 3.3, defense counsel falsely submitted that the individual defendants knew facts that they did not know. For example, defense counsel claimed that the "officers also knew Neita had a history of animal abuse and that ACC had reported he was beating Macy." Dkt. 136-1, Def.'s Summ. Judg. Memo, p. 19. Baselessly maligning Plaintiff as a person known to have a history of animal abuse violates Rule 3.3, and no such facts exist in this case. Defense counsel falsely claimed that the officers "knew Macy was a short-haired pit bull . . . that . . . cannot tolerate cold weather and should not be left outside for extended periods of time." Dkt. 136-1, Def.'s Summ. Judg. Memo, p. 16. The officers claimed to have no such knowledge: "Q. . . . you do know, sir, that . . . some dogs are made to be outside and that dogs can exist in the cold - some dogs can exist in the cold for an extended period and be just fine, right? Ms. Dory: Objection. . . . Not a 30(b)(6) expert on dogs. A. Yeah, I would not know that." Dkt. 139-3, Enriquez Dep., p. 211:3-11. Numerous other examples in the summary judgment briefing exist.

Most recently, the defense misrepresented to the Court that documents about a witness were not produced because they "were not responsive to any of Plaintiff's discovery requests." Dkt. 181, p. 7. Plaintiff made clear and unambiguous requests for records and information about witnesses, and the defense's claim in their reply brief that Plaintiff made no request covering the

8

withheld records violated ABA Model Rule 3.3.  Plaintiff's request for production number 9 sought, "All documents relating to the Plaintiff, the Defendants, or any witnesses that you or your representatives have obtained at any time."  R. 147-5, p. 4.  This false statement, made in support of charging Vaughn Neita with costs incurred for the copying of records never produced in the litigation, reflects a callous disrespect for the litigation process, the duty of candor to the Court, and obligations to opposing counsel.

The defense also compounded their misconduct by standing on their misrepresentation after Plaintiff brought it to their attention.  *See* Dkt. 184 (Plaintiff's sur-reply).  A lawyer must correct a misrepresentation to the Court after it is made. ABA Model Rule 3.3.  This independent act of dishonesty reflects a clear intent to deceive the Court, a conclusion difficult to deny in the context of the other misconduct during the litigation.[3]

Within the petition for the bill of costs, the defense made several claims that violated Rule 3.3.  "4Discovery's efforts were to ensure that e-mail addresses and text messages were in a readable format."  Dkt. 181, p. 9.  On July 29, 2021, the defendants reported in a joint status report that their third-party consultant "did not return any emails that are relevant to the litigation."  Dkt. 109, p. 2.  The Court found the defense's claim dubious and found that the City had included requests for copies "obviously outside even the search process," providing relevant examples.  Dkt. 185, p. 7, n. 6.  The emails had been produced before litigation began through a FOIA request.

Defense counsel's representations are untruthful, and the Court should disqualify the Corporation Counsel's Office from continuing to represent the Defendants.  Defense counsel's abuse of the duty of candor, taken as a whole, is far "greater than the sum of the parts of which it

---

[3] It would be hard to accept that defense counsel did not know that it had an obligation to correct misrepresentations.

9

is made." *Fuery v. City of Chicago*, 900 F.3d 450, 453 (7th Cir. 2018). Defense counsel's "incremental abuses chip away at the fair administration of justice and frustrate a trial judge's faith that she can rely upon the lawyers before her – officers of the court – to set forth a fair and accurate presentation of the facts and law." *Id.* at 454. Unlike in *Fuery*, however, "the sterile view of [the Court's] Monday morning recliner," provides a better analytical framework for appreciating Defendants' abuse, and with the benefit of 20/20 hindsight, Defendants, assisted by counsel, abused the judicial process throughout the litigation to aid a conspiracy to conceal evidence and cover-up for a dishonest police officer.

### V. The Corporation Counsel's Office Violated Rule 3.4

The Corporation Counsel's Office violated ABA Model Rule 3.4, and the Court should disqualify the Corporation Counsel's Office from representing the Defendants. The Rule prohibits the obstruction of another party's access to evidence, prohibits falsifying evidence or counseling or assisting a witness to testify falsely, prohibits counseling or assisting another to obstruct evidence, and prohibits knowingly disobeying obligations under the Federal Rules of Civil Procedure.

The circumstances suggest that the Corporation Counsel's Office violated this rule in three respects: 1) post-judgment proceedings; 2) body camera video; and 3) Service Requests (SRs). Plaintiff set forth additional circumstances related to this evidence in his Motion For Reconsideration over the Bill of Costs, Dkt. 188, pp. 7-10, which Plaintiff seeks to incorporate here. Defense counsel obstructed, and the Court should disqualify the Corporation Counsel's Office from continuing to represent Defendants in this matter to protect the integrity of the court.

10

### A.     <u>Post-Judgement Discovery of Withholding</u>

Defense counsel withheld documents obtained for use in the case without any basis, and in furtherance of their obstruction of Plaintiff's access to evidence in the Defendants' possession, and although the withholding was discovered post-judgment, defense counsel misrepresented to the Court that the documents "were not responsive to any of Plaintiff's discovery requests." Dkt. 181, p. 7. The Court found that the "files related to witness Figueroa," Dkt. 185, p. 5, and Plaintiff's request for production number 9 sought, "[a]ll documents relating to the Plaintiff, the Defendants, or any witnesses that you or your representatives have obtained at any time." R. 147-5, p. 4. By obstructing Plaintiff's access to evidence, defense counsel violated ABA Model Rule 3.4.

Defense counsel also obstructed Plaintiff's access to evidence related to their expert, who had been retained to testify about Rittorno's concealment of electronic discovery, namely photos of Macy and the doghouse Rittorno had emailed to herself through private addresses. Dkt. 139-4, pp. 209:10-309:23 (testifying that used private email to send herself evidentiary photos of the scene and Enriquez with the dog because the dog looked cute with Officer Enriquez). The Court found "a number of the entries on the invoices are obviously outside," Dkt. 185, p. 7, n. 6, the scope of searching for emails, identifying documents never produced in discovery. Within the withheld documents, the defense made an undisclosed agreement with the witness, and the defense made no claim that any records were privileged. The Court should disqualify defense counsel.

### B.     <u>Body Camera Evidence</u>

Defense counsel obstructed Plaintiff's access to evidence by issuing initial Rule 26 disclosures or responses to interrogatories and document requests on behalf of the City of Chicago that did not include COPA's investigation. COPA's investigator Jonathan Cronin downloaded the body camera evidence on October 28, 2019. Dkt. 188-2 (lines 13-15); Dkt. 188-3 (lines 13-15);

Dkt. 188-4 (lines 13-15). The evidence had been uploaded and properly labeled on April 12, 2019, *id.*, the same day defense counsel appeared for the individual defendants. Dkt. 9-10.

The proper labeling of the videos that corresponded with defense counsel's appearance in the case coupled with the issuance of Rule 26 disclosures in December 2019 and responses to requests for production and interrogatories in April 2020 that did not include the COPA file or the body camera videos found therein creates the clear inference of obstruction by defense counsel. No reasonable lawyer could certify the completeness of discovery disclosures or responses without such records, and the fact that the COPA file happened to have video of the officers bringing Macy into the cold and explicitly and implicitly impeaching the officers' narrative in numerous material respects creates the inference that CPD's legal arm obstructed access to evidence. The Court should disqualify the Corporation Counsel's Office so that attorneys for the defense can evaluate and comply with their obligations.

### C. The Circumstances Suggest That Defense Counsel Assisted Rittorno In Creating A False Affidavit

The circumstances create the inference that defense counsel assisted Rittorno in creating a false affidavit designed to facilitate the admission of baseless prejudicial factual material. In support of summary judgment, Defendant Rittorno offered an affidavit dated April 11, 2022, that contradicted her own sworn testimony about the information in her possession before she went to the scene of Plaintiff's arrest. *See* Dkt. 139-2. The Court credited Rittorno's claim that her change in testimony was "to clarify a point on which her memory failed during her deposition." Dkt. 167, p. 8. Respectfully, the circumstances do not permit the inference of Rittorno's failed memory and suggest that defense counsel had Rittorno create a false affidavit.

The nature of defense counsel's communications about the discovery of the missing SR files in October 2020 creates an inference that in April 2022, defense counsel assisted Rittorno in

submitting a false affidavit.  On October 19, 2020, defense counsel advised that "in preparing for the upcoming depositions, Defendants realized that the document bates-labeled FCRL 2208 (the email chain between Defendant Rittorno and Animal Care and Control Supervisor Andreas Morgen), references 'two-SRs.'  At this time, Defendants are attempting to find out what ACC Supervisor Andreas Morgen meant when he referenced 'two SRs.'"  Dkt. 188-10.  The defense then produced the two SR files on October 20, 2022, noting that they were provided to the defense "last night."  Dkt. 188-11.

On October 29, 2020, Defendant Enriquez testified that the only information he knew about this incident he received verbally from Defendant Rittorno, Dkt. 139-3, Enriquez Dep., p. 17:15-22.  Defendant Enriquez confirmed that he had spent several hours reviewing documents and speaking with his lawyers to prepare for the case.  *Id.* at pp. 172:5-173:20. On November 3, 2020, Defendant Rittorno confirmed Enriquez' claims, testifying that she did not have the SRs before going to the scene of Mr. Neita's arrest.  Dkt. 188-8, Rittorno Dep., p. 325:7-12.  Similar to Enriquez, Rittorno testified that she had recently prepared for her testimony with defense counsel and reviewed documents.  Dkt 188-8, Rittorno Dep., pp. 7:13-8:6.

The SR files had arisen within two weeks of Rittorno's deposition, and the individual defendants spent hours with their attorneys reviewing documents and preparing for their depositions.  If Rittorno had indicated to her own attorneys that she possessed the SR files in October or November 2020, then Rittorno would have been obligated to amend her sworn written discovery responses to the contrary and defense counsel would have been obligated to correct Rittorno's failed memory immediately after she testified, if not during her testimony, to provide Plaintiff's counsel with an adequate opportunity for cross-examination.

13

Thus, Rittorno's effort to explain her failed memory as incident to the fact that she did not see the SRs in the depositions fails. Rittorno also did not disclose the SR files in her Rule 26 disclosures or April 2020 answers to interrogatories and production requests. When defense counsel discovered the possibility that more records might be missing, she wrote that they were trying to figure out what a reference in Morgan's email meant, not that they realized the defendants possessed undisclosed information before Plaintiff's arrest. When Rittorno testified that she did not have the SR files on November 3, 2020, defense counsel did not correct the record.

Instead, Rittorno claims to possess the SR files for the first time in April 2022, remembering for the first time that she possessed other material information related to Plaintiff's arrest. *See* Dkt. 139, LR 56 Statement, p. 2, ¶ 6 ("The SR provided Rittorno with additional information about the alleged abuse. . . . The dog was being beaten."). If Rittorno had information that the dog was being beaten before Plaintiff's arrest, then the defendants and their counsel would have disclosed such information before April 11, 2022. The rules required them to.

The timing of the affidavit itself suggests that defense counsel aided Rittorno in creating the false affidavit. Not only was such information not disclosed during discovery, but the affidavit is also dated April 11, 2022, the same day as defense counsel's summary judgment filing citing the affidavit in support in multiple places in the facts and briefing. The circumstances suggest that defense counsel, at the time of summary judgment, had Rittorno create an affidavit to enable a bad faith argument that Neita beat his dog, when no such evidence had otherwise existed, in order to prejudice the Court and potential jury with otherwise inadmissible evidence.

### VI. <u>The Court Should Monetarily Sanction Defense Counsel</u>

For dishonest misconduct and the obstruction of evidence, the Court should sanction defense counsel by imposing the excessive costs of this litigation onto defense counsel. 28 U.S.C.

14

§ 1927 provides that any attorney who multiplies the proceedings in the case through vexatious and unreasonable conduct shall be liable for the excessive costs. As argued throughout this brief, defense counsel violated ABA Model Rules 4.2, 3.3, and 3.4 as part of a dishonest effort to conceal the truth and to benefit a conspiracy to deny Plaintiff access to the Courts. The concurrent conflict of interest left defense counsel unable and unwilling to tell the truth, further multiplying the proceeding. Accordingly, defense counsel have unreasonably and vexatiously multiplied the proceedings, and the Court should impose the cost of the excessive costs onto the defense.

WHEREFORE, Plaintiff respectfully requests that this Court disqualify the Corporation Counsel's Office from representing the Defendants and sanction defense counsel pursuant to 28 U.S.C. § 1927, and for any such other or further relief as this Court deems appropriate.

.

DATED: December 27, 2023

Respectfully submitted,

*/s/      Jared Kosoglad*
JARED S. KOSOGLAD
Jared S. Kosoglad P.C.
111 N. Wabash #3166
Chicago, Illinois 60602
jared@jaredlaw.com
*Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

The undersigned respectfully certifies that he served all counsel of record a copy of this pleading through the Court's electronic filing system.

*/s/      Jared Kosoglad*